COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

SYL NMN ROGERS

v.      Record No. 1001-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
AUGUST 9, 2022

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Onzlee Ware, Judge

(J. Thomas Love, Jr.; Office of the Public Defender, on brief), for
appellant. Appellant submitting on brief.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General; Susan Brock Wosk, Assistant Attorney General,
on brief), for appellee.

Syl Rogers appeals his conviction for misdemeanor assault and battery in violation of Code

§ 18.2-57. Rogers challenges the sufficiency of the evidence establishing that he touched the victim

in an unlawful manner.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

doing so, we discard any of the appellant's conflicting evidence, and regard as true all credible

evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from

that evidence. *Gerald*, 295 Va. at 473.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the night of October 31, 2020, Jessica Thurman and a friend went to a Roanoke bar and restaurant for a Halloween party. While waiting for a waitress to take their orders, Thurman and her friend went outside to "vape." On the way, Rogers approached them, asked Thurman if he knew her, and stated that she should have a drink with him. Thurman told him no and walked away.

After vaping, Thurman and her friend returned to their table and Rogers approached them again and introduced a friend of his. His friend walked away, but Rogers remained, lingering by Thurman's table. Eventually, after Thurman ignored Rogers, he retreated. About twenty minutes later, as Thurman and her friend were leaving, Rogers approached them and grabbed Thurman's wrist. He told her to let him buy her a drink, which she declined. Rogers then "pulled [her] close" and asked for her phone number. Thurman refused, and Rogers then whispered in her ear, "We should go fuck after this." Thurman told Rogers no, reiterated that she was going outside with her friend, and walked away.

After about five minutes, Thurman and her friend returned to their table and asked for their checks so that they could leave. While Thurman was signing her credit card receipt, Rogers came to the table and again asked to buy her a drink. Thurman again told him no, that she did not "want to drink anymore" and "was ready to go home," but Rogers ignored her requests and began fondling her buttocks, kissing her neck, kissing her cheek, and instructed her to "kiss him on the mouth." Thurman refused and demanded that Rogers stop, but he refused to do so. Thurman's friend tried to separate Rogers and Thurman, but Rogers continued to touch Thurman's buttocks and back. Thurman repeatedly told Rogers to stop and tried pushing him away, but he ignored her requests. Eventually, Thurman managed to get away from Rogers, and she contacted a police officer.

At trial, Jordan Glenn, who was also at the restaurant that evening, testified that he saw Rogers touching Thurman and her friend and could see that the women were "uncomfortable" as Rogers was "caressing different parts of them." Thurman testified that when Rogers touched her,

she was "uncomfortable" and that she wanted him to stop. She testified that she repeatedly told Rogers "no" and that she would not go anywhere with him, yet he refused to stop verbally haranguing and physically touching her.

At the close of the Commonwealth's case-in-chief, Rogers moved to strike the evidence, arguing that he did not have the necessary intent for assault and that he had not committed an "unlawful touching." He argued that he had not "intend[ed] to place [Thurman] in fear of bodily harm or . . . reasonable anticipation of bodily harm." Rogers characterized his behavior as "engaging in sort of a social norm for the night on Halloween at a bar." Rogers also argued that he did not have the intent to commit battery but instead had merely tried to "engage [Thurman] in some sort of relationship" and "gave up after a short period of time." The court denied the motion to strike, which Rogers renewed, and the circuit court denied again.

The circuit court ultimately found that Thurman's account was credible and that Rogers had touched Thurman's backside and kissed her neck. The circuit court found Rogers' conduct was sufficient to convict him of assaulting and battering Thurman.

ANALYSIS

On appeal, Rogers argues that the evidence was insufficient to convict him of assault and battery because the evidence did not prove that he committed unlawful touching. He maintains that he "engaged in an effort to start a romantic relationship with" Thurman without the intent to cause bodily harm and his "touching was neither rude, insolent or angry"; thus, Rogers argues, the circuit court erred by convicting him.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he [appellate] Court does

not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (first alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Assault and battery are common law crimes." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019) (alteration in original) (quoting *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010)). The touching does not need to cause physical injury—an "injury to the [victim's] mind or feelings" is sufficient. *Id.* (alteration in original) (quoting *Parish*, 56 Va. App. at 330). "If the victim consents to the touching, the touching is not unlawful and therefore not a battery." *Gnadt v. Commonwealth*, 27 Va. App. 148, 151 (1998). "If the touching exceeds the scope of the consent given, the touching is not consensual and thus is unlawful." *Id.*

Furthermore, it is "the intent of the actor, not . . . the force applied" that determines whether a battery has occurred. *Parish*, 56 Va. App. at 330 (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 469 (2000)). Intent, "[l]ike any other element of a crime, . . . may be proved by circumstantial evidence." *Kelley*, 69 Va. App. at 628 (quoting *Adams*, 33 Va. App. at 471). Unlawful intent "may be imputed if the touching is 'done in a rude, insolent, or angry manner.'" *Parish*, 56 Va. App. at 331 (quoting *Adams*, 33 Va. App. at 469). Moreover, "intent may be inferred from the nature of the

overt act and the surrounding circumstances." *Id.* (quoting *Clark v. Commonwealth*, 279 Va. 636, 642 (2010)). "Whether an act is done in a 'rude, insolent, or angry manner' is a finding of fact that this Court will not disturb on appeal unless the finding is plainly wrong or no evidence supports it." *Kelley*, 69 Va. App. at 628-29.

Here, the evidence showed that after Thurman refused Rogers' first two requests to have a drink, Rogers grabbed her wrist, pulled her close, and whispered in her ear that they "should go fuck after this." Thurman unequivocally told him no and walked away. *See id.* at 629 (affirming conviction for battery of victim who "signaled her lack of consent by trying to pull away and saying 'no, no, no'" before defendant "advanced and grabbed her face in an effort to kiss her"). Thurman explicitly refused Rogers' requests to spend time together and then ignored him altogether, establishing that she did not consent to his advances. Undeterred, Rogers again asked Thurman to have a drink with him as she was preparing to leave; she again told him no. In response, Rogers began caressing Thurman's buttocks, touching her back, and kissing her neck and cheek—while Thurman continued to tell Rogers no, to stop, and tried to push him away. Thurman's testimony was that Rogers touched—and continued touching—her over her repeated objections and requests for him to stop and despite her discomfort being evident to other patrons. *See id.* ("[I]t was entirely reasonable for the court to conclude that the appellant intended to act in a rude manner and did so when he grabbed the victim's face and attempted to force a kiss on her" after she had "signaled her lack of consent."); *see also Robinson v. Commonwealth*, 70 Va. App. 509, 516 (2019) ("[T]he facts make clear that the touching was accomplished against the will of the complaining witness as the victim twice got up to try to get away from [the defendant].").

The evidence supports the circuit court's conclusion that Rogers intended to act in a rude manner by touching Thurman despite her multiple requests that he not do so. The court found that Thurman was a credible witness and thus that Rogers had indeed touched her as she described

despite her demonstrated lack of consent. It is well-established that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

The record supports the circuit court's fact finding that Rogers' touching was unwanted and committed in a rude manner, and, as such, the circuit court's credibility determinations were not plainly wrong. Thus, the record supports the conclusion that the Commonwealth's evidence was credible and sufficient to sustain Rogers' conviction for assault and battery. *See Kelley*, 69 Va. App. at 629.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*