COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and White
Argued at Norfolk, Virginia

SAMUEL DAVID YANCEY

MEMORANDUM OPINION[*] BY
v.          Record No. 0076-22-1          JUDGE GLEN A. HUFF
NOVEMBER 22, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

(Harry Dennis Harmon, Jr., on brief), for appellant.  Appellant
submitting on brief.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Samuel David Yancey ("appellant") was convicted in the Norfolk Circuit Court (the "trial

court") on one count of assault and battery against an employee of a local correctional facility, in

violation of Code § 18.2-57(C).  Appellant contends that the evidence was insufficient to support

the conviction and that the trial court erred in denying his post-trial motions.  For the following

reasons, this Court affirms appellant's conviction.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Carter v. Commonwealth*,

300 Va. 371, 374 (2021) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

In August 2020, Joseph Bankhead was employed by the Norfolk Sheriff's Office as a

deputy recruit.  Bankhead worked under the supervision of a sworn deputy and was directly

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

responsible for the health, care, safety, and supervision of the inmates at the Norfolk City Jail (the "jail"). On August 9, 2020, Bankhead was working the night shift at the jail, which included escorting Nurse Jeiskaly Bodden through the jail as she administered medications to the inmates. While doing so, Bankhead wore the standard uniform for deputy recruits: "black uniform. No patches. No nametag." Unlike Nurse Bodden, Bankhead was not authorized to hand out medication.

When Bankhead and Nurse Bodden reached appellant's cell, appellant complained that he had not received his meal tray that evening. Bankhead told appellant he would talk to the deputy on post after he finished assisting the nurse. Appellant then directed the same complaint to Nurse Bodden who explained that she could not get him a meal tray because "that is not a medical issue. That's a security issue." Appellant then "started getting aggravated," raising his voice "louder and louder" and banging on the door to his cell. Bankhead told appellant to calm down, but appellant "wouldn't stop," so Bankhead closed the chuck hole—a slot on the bottom half of the cell door where inmates receive meal trays—and the door flap—an opaque flap that can cover the mesh screen separating inmates from anyone in the corridor—on appellant's cell.

Appellant continued to hit and kick the door and became increasingly loud, agitated, and disruptive. When Bankhead re-opened the door flap to get appellant to calm down, appellant spit at him through the metal mesh screen. The spit landed on Bankhead's glasses and the left side of his face. At trial, Nurse Bodden stated she saw "a mist" come from inside appellant's cell. Both she and Sheriff's Deputy Andre Davis—who was also working the night shift—testified that they saw Bankhead wipe what looked like spit off his face.

Sheriff's Deputy Darren Johnston also heard appellant's commotion from around the corner and approached to investigate. As he turned the corner onto the hallway where Bankhead and Nurse Bodden were standing in front of appellant's cell, Deputy Johnston "saw liquid come through

- 2 -

the screen and onto Mr. Bankhead's face." After asking Bankhead to step away, Deputy Johnston tried to talk to appellant and calm him down. Appellant, however, was still "yelling and aggravated," and "he spent the next couple of moments spitting at the door trying to show [Deputy Johnston] that he could not spit through the screen." But Deputy Johnston testified at trial that appellant's spit "was still coming through the screen."

Appellant was arrested and indicted on one count of assault and battery under Code § 18.2-57(C). Judge Atkins presided over a bench trial for appellant on March 2, 2021. After the Commonwealth finished presenting its case-in-chief, appellant made a motion to strike for insufficient evidence. Specifically, appellant argued that the evidence failed to prove he knew or had reason to know that Bankhead was an employee of the jail, as required for conviction under Code § 18.2-57(C). He also contended that the evidence failed to prove Bankhead was in fact an employee of the jail, defined by Code § 18.2-57(C) as being "directly involved in the care, treatment, or supervision of inmates." Finally, appellant alleged that the evidence failed to prove he intentionally spit at Bankhead as opposed to accidentally caused some other substance to strike Bankhead's face.

The trial court denied appellant's motion, and the parties then delivered their closing arguments. In conjunction with closing, appellant renewed his motion to strike for the same reasons previously raised, and the trial court again denied the motion and found appellant "guilty as charged." In doing so, the trial court first recounted Bankhead's duties and authority—escorting Nurse Bodden, opening and closing chuck holes, wearing a uniform—and concluded that he was "an employee under the language of the statute" and that appellant knew or should have known Bankhead was an employee of the jail. The trial court then expressly credited Bankhead's testimony and also determined that his account was corroborated by the testimony from Nurse Bodden, Johnston, and Davis.

- 3 -

The trial court subsequently held a sentencing hearing on December 10, 2021, at which it sentenced appellant to three years in prison, with one year and seven months suspended. The final sentencing order was signed three days later on December 13, 2021.

On December 27, 2021, Mr. Robinson, on behalf of appellant, filed a motion to set aside the verdict, a motion to appoint new counsel, and a motion to vacate or suspend execution of the final order until the court ruled on the motion to set aside the verdict. Appellant even explicitly acknowledged in his motions that "[u]nless the Court vacates or suspends execution of its final order, by **January 3, 2021** [sic], it will lose jurisdiction to rule on the post[-]trial motions in this case."

The trial court neither suspended nor vacated the final order, nor did it enter any order whatsoever in response to appellant's motions until January 11, 2022. On that date, the trial court entered an order appointing Harry Harmon as appellant's new counsel on appeal. The following day—January 12, 2022—the trial court entered another order denying appellant's other two post-trial motions. That order noted the trial court had received appellant's post-trial motions on January 10, 2022.

This appeal followed.

ANALYSIS

A. Sufficiency of the Evidence

Appellant asserts that the evidence presented at trial is insufficient to support his conviction for assault and battery under Code § 18.2-57(C). Specifically, appellant claims the evidence failed to prove that he intentionally spit on Bankhead and that he knew or had reason to know Bankhead "was an employee of a local or regional correctional facility directly involved in the care, treatment, or supervision of inmates in the custody of the facility." This Court disagrees with both assertions and affirms the trial court's judgment.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).[1] "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Because "[t]he credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented," *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018)), this Court will not usurp the trier of fact's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The particular provision of Code § 18.2-57(C) for which appellant was convicted states that any person who "commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . an employee of a local or regional correctional facility directly involved in the care, treatment, or supervision of inmates in the custody of the facility . . . is

---

[1] So long as the record provides "evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

guilty of a Class 6 felony, and the penalty upon conviction shall include a term of confinement of at least six months."

*Bankhead's Status as Employee of the Jail*

The first issue appellant raises is whether the evidence proved that Bankhead, as a deputy recruit of the sheriff's office in August 2020, met Code § 18.2-57(C)'s definition of "an employee of a local or regional correctional facility directly involved in the care, treatment, or supervision of inmates." As explained below, Bankhead met that definition.

Appellant does not dispute the fact that Bankhead was employed by the sheriff's office—which provides law enforcement services at the jail—and assigned to carry out the duties of his position as deputy recruit at the jail. The nature of Bankhead's duties, rather than his job title, is the controlling factor as to whether he is "directly involved in the care, treatment, or supervision of inmates." Code § 18.2-57(C). Here, Bankhead testified that his duties as deputy recruit included the "direct supervision" of and responsibility for the "health care and safety of the inmates" at the jail.

One of Bankhead's assignments in fulfillment of those duties was to escort nurses during their distribution rounds and "make sure they're passing out the right med[ication]" to the inmates. Notwithstanding some limitations on Bankhead's authority as a deputy recruit—such as being unable to move inmates in the jail section where appellant was housed without the assistance of two deputies—the role he actually played at the jail satisfies the criteria of Code § 18.2-57(C). The fact that Bankhead, as a deputy recruit, was subject to supervision by sworn deputies does not render his interaction with the inmates any less direct, or his duties any less involved with their care and treatment, than if he himself were a sworn deputy.

Appellant next argues the evidence did not prove that he knew or should have known Bankhead was "an employee" of the jail. Code § 18.2-57(C). The element of knowledge "is a fact

that may be proved by direct or circumstantial evidence." *Tooke v. Commonwealth*, 47 Va. App. 759, 766 (2006). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Id.* (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

Here, the evidence is sufficient to support the trial court's finding that appellant knew or should have known Bankhead was employed by the jail. Appellant was housed in the P-Section of the jail—a secure facility—and attended to by sheriff's deputies. On the day of the offense, Bankhead wore the plain black uniform standard for all deputy recruits as he escorted Nurse Bodden around the jail to supervise the distribution of medication. That Bankhead was supervising Nurse Bodden, wearing the black deputy recruit uniform, and not himself handing out any medications, yields the reasonable inference that appellant would or should have known Bankhead was an employee of the jail.

Moreover, as the trial court pointed out when denying appellant's motion to strike, appellant's complaint to Bankhead about his meal tray suggests his belief that Bankhead had authority to address that concern as a member of the jail's staff. The fact that appellant also addressed the same complaint to Nurse Bodden does not undermine the trial court's rationale; rather, it merely indicates that appellant also believed Nurse Bodden to be an employee of the jail who could satisfy his needs. Indeed, during appellant's renewed motion to strike, the trial court implied that appellant would not have mistaken Bankhead for one of the nurses, but that even under such a claim, appellant could have reasonably believed that the nurses were also employees of the jail, rather than independent contractors, given their authority to dispense medication directly to inmates.

Finally, Bankhead's manipulation of the chuck hole and door flap on appellant's cell, in response to appellant's violent outburst, further indicates that he was acting under the authority

of the sheriff's office in a way that would have been obvious to appellant. Therefore, the trial court did not err in finding that Bankhead was "an employee under the language of the statute" and that appellant knew or should have known as much.

*Spitting Sufficient for Conviction Under Code § 18.2-57*

Appellant also challenges his conviction for assault and battery on the basis that the Commonwealth failed to prove he "intentionally spit" on Bankhead. Subsumed within that argument is appellant's assertion that the Commonwealth provided only circumstantial evidence that "did not prove the substance was in fact spit." This Court disagrees and finds that the record supports the trial court's determination that appellant intentionally spit on Bankhead.

As pertinent to appellant's case, the Commonwealth can prove a battery by establishing "a 'wil[l]ful or unlawful touching' of another." *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). *See Blankenship v. Commonwealth*, 71 Va. App. 608 (2020). This Court has previously held that spitting "constitute[s] an infliction of bodily harm" because it is "an act that involve[s] physical contact and [is] deeply offensive." *Gilbert v. Commonwealth*, 45 Va. App. 67, 71 (2005).[2] In *Gilbert*, this Court affirmed appellant's conviction for assault and battery under Code § 18.2-57 by finding that appellant spit on a law enforcement officer "in a rude, insolent or angry manner."[3] 45 Va. App. at 72.

"Whether an act is done in a 'rude, insolent, or angry manner' is a finding of fact that this Court will not disturb on appeal unless the finding is plainly wrong or no evidence supports it." *Kelley v. Commonwealth*, 69 Va. App. 617, 628-29 (2019). The evidence here clearly supports the

_____

[2] "At common law, any touching 'in anger, without lawful provocation,' however slight, including 'spitting in a man's face,' was sufficient to support a battery conviction." *Gilbert*, 45 Va. App. at 70 (quoting *Hardy v. Commonwealth*, 58 Va. 592, 601 (1867)).

[3] The distinction between a "law enforcement officer" and Bankhead's status as an employee of the jail is immaterial for purposes of determining whether appellant's act of spitting on Bankhead constitutes an "assault and battery" under Code § 18.2-57.

- 8 -

trial court's finding that appellant was "upset and mad" when he spit on Bankhead. Notably, both Bankhead and Nurse Bodden testified that appellant started yelling, cursing, and kicking his cell door when they could not immediately grant his request for a meal tray.

Appellant persisted in his aggressive and belligerent behavior even after Bankhead closed the chuck hole and door flap on appellant's cell. Indeed, his tantrum was so loud and disruptive that it drew the attention of Deputies Johnston and Davis. In an attempt to calm appellant down, Bankhead re-opened the door flap, at which point appellant spit on Bankhead through the mesh screen of the door. Accordingly, the record supports the trial court's finding that appellant intentionally spit on Bankhead in violation of Code § 18.2-57.[4]

In his final assertion under this assignment of error, appellant contends that the evidence of the substance Bankhead wiped off his face was merely circumstantial and insufficient to prove the substance was in fact appellant's spit. This Court finds no merit in that argument.

It should go without saying that a criminal conviction may rest upon circumstantial evidence. *See, e.g.*, *Lucas v. Commonwealth*, 75 Va. App. 334, 347 (2022) ("[T]he 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919))). The trier of fact bears the responsibility of determining "which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Id.* at 348 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)).

This Court finds no reason to disturb the trial court's determination that it was appellant's spit, rather than some other substance, that struck Bankhead's face. First, and most importantly, the

---

[4] The trial court also found that "[i]t is reasonable to infer that projecting spit with enough force to go through mesh and hit someone in the face is a purposeful and intentional act."

trial court credited Bankhead's testimony that he saw appellant directly spit on his face. *See Kelley*, 69 Va. App. at 626 ("'The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility' as well as 'the weight to be given their testimony.'" (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010))). That *direct evidence*, by itself, is sufficient to support the trial court's finding. *See id.* ("'[T]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the facts' bases its decision 'upon that testimony.'" (quoting *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010))).

Second, the trial court expressly acknowledged the other circumstantial evidence that supported both Bankhead's testimony as well as the court's determination that appellant did spit on Bankhead. Specifically, Nurse Bodden and Deputy Johnston saw some sort of liquid come through the mesh screen of appellant's cell door and land on Bankhead's face. Nurse Bodden, along with Deputy Davis, then saw Bankhead wiping that substance off his face. When Deputy Johnston stepped in front of appellant's cell door, he saw appellant spitting at the mesh screen, and he testified that appellant's spit was coming through the screen. Considering this evidence as a whole, a factfinder could reasonably conclude appellant spit at Bankhead.

In sum, the Commonwealth's evidence sufficiently proved that appellant committed an assault and battery on deputy recruit Bankhead, while knowing or having reason to know he was an employee of the jail directly responsible for the care, treatment, or supervision of the inmates. Therefore, because the trial court's finding of guilt is neither plainly wrong nor without evidence to support it, this Court affirms appellant's conviction.

B. <u>Post-Trial Motions</u>

Appellant also asserts that the trial court erred in denying his post-trial motions to set aside the verdict and to vacate the conviction.[5]  The ruling, however, was not made while the trial court still had active jurisdiction.  Accordingly, the ruling is a nullity, and no action of the trial court has been preserved for appeal.

"All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  Rule 1:1; *see Kosko v. Ramser*, 299 Va. 684, 689 (2021) ("Once a final written order is entered, a trial court has twenty-one days to enter a new written order or to enter a written order modifying, suspending, or vacating the prior order to allow the court sufficient time to address the post-trial motion.").  "The running of the twenty-one day time period prescribed by Rule 1:1 may be interrupted *only* by the entry, within [that] period, of an order modifying, vacating, or suspending the final judgment order."  *Super Fresh Food Mkts. v. Ruffin*, 263 Va. 555, 560 (2002) (emphasis added).

"Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1."  *Id.*  "Once a final judgment has been entered and the twenty-one day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case."  *Id.* at 563.

Here, the trial court entered the final sentencing order on December 13, 2021.  Thus, it had until January 3, 2022, to enter an order expressly modifying, vacating, or suspending the sentencing order so it could consider appellant's post-trial motions.  *See id.* at 562 ("[A] letter from counsel

---

[5] Specifically, appellant contends the trial court abused its discretion in summarily denying his post-trial motions without first conducting a plenary hearing on the alleged potential conflict of interest and bias of Judge Atkins.

requesting that the trial court vacate a final judgment [is] insufficient to toll the running of the twenty-one day time period of Rule 1:1 because '[a]n order of the court [is] necessary' to achieve that end." (third alteration in original) (quoting *Lyle v. Ekleberry*, 209 Va. 349, 351 (1968))). The record, however, contains no such order.

Rather, the trial court did not rule on appellant's motions until January 11 and 12, more than twenty-one days after entry of the final sentencing order. *See Kosko*, 299 Va. at 689 ("'[A] trial court speaks only through its written orders,' and written 'orders speak as of the day they were entered.' Orders are 'entered' on the day they are signed by the judge." (quoting *Jefferson v. Commonwealth*, 298 Va. 473, 477 (2020))).[6] Thus, notwithstanding appellant's timely attempt to suspend or vacate the judgment so the trial court could consider his motions, the trial court lost jurisdiction over appellant's post-trial motions on January 3, 2022. *See Bailey v. Commonwealth*, 73 Va. App. 250, 260 (2021) ("[A]n order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter or over the parties." (quoting *Singh v. Mooney*, 261 Va. 48, 51 (2001))).

Because the trial court lost jurisdiction to modify, vacate, or suspend the final sentencing order on January 3, 2022, its January 12 order summarily denying appellant's post-trial motions is a nullity. As a result, the absence of any ruling on appellant's motions while the trial court still had jurisdiction leaves this Court without a decision from the trial court to consider on appeal and also prevents this Court from considering the merits of appellant's post-trial motions. *See Bailey*, 73 Va. App. at 264; *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (concluding that a

---

[6] The Supreme Court has steadfastly held that even oral decisions made while the circuit court retains jurisdiction, but which are not memorialized in a written order until after the court's jurisdiction expires, neither extend the twenty-one-day jurisdictional period nor save such an untimely order from constituting a nullity. *See Kosko*, 299 Va. at 689; *Wagner v. Shird*, 257 Va. 584, 587-88 (1999).

litigant's failure to obtain a ruling on a motion in the circuit court leaves the appellate court with nothing to review, and thus, waives any arguments raised in the motion).

## CONCLUSION

As explained above, appellant did not preserve his second assignment of error for appellate review. Therefore, having found the evidence presented at trial sufficient to support the trial court's determination of guilt, this Court affirms appellant's conviction.

*Affirmed.*