COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Causey and Raphael

PAMELA JEAN LABUDA

MEMORANDUM OPINION*
v.      Record No. 1332-23-2                                    PER CURIAM
                                                               MAY 14, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
S. Anderson Nelson, Judge

(M. Kevin Bailey; M. Kevin Bailey, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.


Appealing her conviction for grand larceny, Pamela Jean Labuda argues that she did not

intend to permanently deprive the victim of his vehicle. Because the evidence sufficed for a

reasonable jury to find her guilty beyond a reasonable doubt, we affirm, finding that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a).

BACKGROUND[1]

On September 2, 2022, Timothy Doss, a contractor, drove his maroon Chevrolet truck to

a jobsite in Appomattox. The truck carried various tools for electrical and plumbing work. Doss

unloaded his equipment and intentionally left the keys in the truck so that other contractors could

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

move the vehicle when necessary. While Doss was working under a house, he heard a commotion. Crawling out, Doss observed someone driving away in his truck. He reported his vehicle stolen.

The next day, Farmville Police Officer Daniel Bowman responded to a report that a stolen truck had been located. Bowman arrived at the Farmville Motel and met an officer who was already there. About ten minutes later, Labuda approached Bowman and identified herself. She told him that she took the truck to escape from several men attacking her, although she appeared to be uninjured and did not identify her attackers. Bowman arrested Labuda, and the truck was towed to the Appomattox County Sheriff's Office for an inspection.

Appomattox County Investigator Justin Rothergeb determined from the VIN number and license plate that the maroon truck belonged to Doss. Searching the vehicle, Rothergeb found a pair of black-framed reading glasses, a pink journal, and an envelope addressed to Labuda. He also found a plastic bag containing women's clothing, a white handbag, and a pair of women's shoes.[2]

Labuda was charged with grand larceny of a motor vehicle in violation of Code § 18.2-95 and Code § 46.2-390. At trial, Officer Bowman, Investigator Rothergeb, and Doss testified to the facts set forth above. Doss estimated that his truck was worth about $3,000 and that his tools were worth more than $10,000.

At the close of the Commonwealth's case, the trial court denied Labuda's motion to strike, rejecting her argument that the Commonwealth failed to prove that she intended to permanently deprive Doss of his truck. In her own defense, Labuda testified that she had been

---

[2] Rothergeb also discovered a cut red straw with crystalline residue underneath the shoes. Rothergeb testified that, in his training and experience, straws are often used to ingest methamphetamine. In the glove compartment, Rothergeb found a glass smoking device with burnt residue. Rothergeb, however, did not perform a field test to determine the presence of any illegal substances.

homeless at the time. After separating from her boyfriend, Labuda stayed at the Farmville Motel for a few days. While there, Labuda's friend, D.C., asked Labuda to spend the weekend with her. D.C. picked up Labuda from the motel and, on their way to Appomattox County, bought methamphetamine. They consumed meth for two days.

On the trip back to Farmville, Labuda testified, the pair quarreled after Labuda accused D.C. of taking her wallet. The argument escalated, and D.C. pulled over on the side of the road, threw Labuda's things out of the car, and attempted to pull Labuda out of the vehicle. Labuda refused to get out, so D.C. collected Labuda's items, drove to a dirt parking lot, and left Labuda there. Labuda said she fell asleep in the parking lot. When she awoke, she knocked on the doors of nearby houses, but no one answered. She did not know where she was because it was dark, and she had no cell phone.

Labuda testified that, by the next morning, she made her way to the main road and found Doss's truck with the keys inside. Labuda took the truck, drove back to collect her things left on the road, and drove back to Farmville. Labuda returned to the motel, showered, and fell asleep.

When the officers arrived the next day, Labuda identified herself to Officer Bowman, informed him that she had taken the truck, and acknowledged that the items in the truck were hers. When asked if she planned to return the truck or contact law enforcement, Labuda said, "I think ultimately what I would have done is called the gentleman who owns the truck and tell him that it was parked somewhere."[3] She said she "was too afraid to go to the police station."

On cross-examination, Labuda admitted that, during her hour-long drive to Farmville, she passed several police stations, including the Farmville Police Department, which was less than a mile from the Farmville Motel. Labuda also admitted that the motel likely had a phone that she

---

[3] Labuda reiterated that she "probably would have left [the truck] at the motel and called [Doss] and said your truck is there at the motel."

could have used. She acknowledged that she had left several items in the truck after she parked it at the motel, rather than bringing them inside. On redirect, her counsel asked if it was Labuda's "end game . . . just to leave the vehicle and call or try to get in touch with Mr. Doss to say here's your vehicle, sorry for the inconvenience." Labuda answered that she "hadn't even made a decision" about that.

After the trial court denied Labuda's renewed motion to strike, the jury found her guilty of grand larceny. The court sentenced Labuda to ten years' incarceration with nine years suspended.

ANALYSIS

On appeal, Labuda argues that the Commonwealth failed to prove that she took Doss's truck with the intent to steal it. She asserts that the jury should have "inferred from her uncontested statements . . . that she took the truck, not with the intent to steal, but with the intent to temporarily deprive Mr. Doss of his vehicle."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The relevant question is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Larceny is "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." *Creamer v. Commonwealth*, 64 Va. App. 185, 205 (2015) (quoting *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010)). Grand larceny is "simple larceny not from the

person of another of goods and chattels of the value of $1,000 or more." Code § 18.2-95. Intent "may be proved by circumstantial evidence." *Creamer*, 64 Va. App. at 205. Circumstantial evidence is "entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)).

The evidence here sufficed for the jury to find beyond a reasonable doubt that Labuda intended to steal the truck.[4] Labuda admittedly took Doss's truck without his permission and drove it from Appomattox to Farmville (about an hour away) without stopping. Labuda's claim that she did not intend to steal the truck is undercut by her conflicting narrative of events. Labuda first told Officer Bowman that she took the truck to get away from men attacking her. At trial, however, Labuda changed her story, describing a days-long trip consuming methamphetamine with a friend that ended with being stranded on the highway.

The jury was free to disbelieve Labuda's conflicting testimony and find that she took the truck with the intent to permanently deprive Doss of possession. Labuda admitted that she passed several police or sheriff's stations after taking the truck, had access to a phone, and left her personal items in the truck after returning to the motel. Her argument that she was "probably" going to leave the truck at the motel and call Doss is unpersuasive, particularly in light of her equivocation on redirect examination that she "hadn't even made a decision" to get in

---

[4] Labuda has not challenged the Commonwealth's evidence that the truck and the tools were worth "$1,000 or more," the threshold for grand larceny under Code § 18.2-95. Doss estimated that his truck and tools were worth over $13,000.

touch with Doss to let him know that she had taken his vehicle and his tools. Because the record supports the jury's credibility determination, we will not disturb the verdict on appeal. *See Creamer*, 64 Va. App. at 205-06 (affirming grand larceny conviction even though there was a factual dispute over whether the appellant had permission to keep the chattel and thus lacked intent to steal it).

<sub>CONCLUSION</sub>

The Commonwealth presented sufficient evidence for the jury to find beyond a reasonable doubt that Labuda committed grand larceny by taking the victim's truck with the intent to permanently deprive him of possession.

*Affirmed.*